## HANSON & a. v. RUSSEL & a.

Where a line between two towns was run out, located and established by the original proprietors of one of the towns, and that line was treated, for more than fifty years, as the correct one between the towns, *held* that it must be re-garded as the true jurisdictional line between the towns, notwithstanding it differed from the calls in the charter; and where it appeared that the line be-tween the towns was also the line between the adjoining counties, *held* that it was also the jurisdictional line between the counties.

A jurisdictional line thus established does not necessarily control the rights of private property, and a party may show that the line of his grant, although designated by the same name, is a different one from the jurisdictional line.

TRESPASS, for breaking and entering the plaintiffs' close, situated in Bartlett, in the county of Coos, on the first day of December, 1848, and on other days and times between that day and the 29th day of January, 1850, the day of the date of the plaintiffs' writ, and cutting down and carying away one hundred of the plaintiffs' pine trees, of the value of one thousand dollars, and five hundred of the plaintiffs' spruce trees, of the value of one thousand dollars.

To sustain their case, the plaintiffs offered the deed of James Willey, land commissioner for the State of New Hampshire, to Alpheus Bean, Stephen Meserve and Andrew Gilman, dated November 26th, 1831, conveying to them a tract of land, bounded as follows : " Beginning at the southwest corner of Hale's Location, on Burton north line, thence westerly on Burton north line to the northwest corner thereof;" and other evidence tending to show that the plaintiffs were seized and possessed of a tract of State land, situated in Bartlett, in the county of Coos, bounded on the south by the north line of Burton, now Albany.

The plaintiffs further offered a copy of the charter of the town of Burton, dated November 6th, 1766, which shows that the chartered north line of Burton, now Albany, began at the middle of the west side line of Conway, and run west.

It was agreed between the parties, that the proprietors of Burton, more than fifty years ago, in locating the north side line of their township, began on the west side line of Conway, at a point varying north from the actual centre of said side line by one quarter of a mile, and, instead of running west, run a course varying from a west course from three to twenty degrees north ; and that the proprietors actually located the line as aforesaid, by establishing corners and defining the same by spotting trees from corner to corner, and that the inhabitants of Albany have ever claimed the same as their north line.

It was also agreed that, since the commencement of this suit, the same line has been established, as the true line between the towns of Albany and Bartlett, by the court of common pleas for the county of Carroll, by due course of law.

It was further agreed that the west side line of Conway is about seven miles long instead of six, as indicated by its charter; and that a line, commencing at the actual middle of the west side line of Conway, and running a due west course, would be south of the cutting hereinafter admitted to have been done by the defendants.

It was also further agreed that the defendants, between the first day of December, 1848, and the 29th day of January, 1850, cut and carried away fifty thousand of pine and spruce timber, from a tract of land claimed as lot No. 6, in the second range, in the town of Albany, which tract is situated south of the line established by the proprietors of Burton as aforesaid, and northerly of a line run as indicated by the charter of Burton as aforesaid, and that Albany, formerly Burton, is in the county of Carroll.

Upon these facts, the defendants moved for a nonsuit, and the questions arising upon the motion were transferred to this court for determination.

*Bellows*, with whom were *Cutler* and *Haywood*, for the defendants.

The north line of Burton, now Albany, is the south line of Bartlett. If the north line is, as located by Burton, and marked fifty years ago, then the *locus in quo* is in Carroll county, and the court in Coos has no jurisdiction of the case.

As we view it, the question presented by the case has nothing to do with the title to land. It is merely a question of jurisdiction, not of territorial boundary; and the matter is to be determined by ascertaining where the actual,

Hanson v. Russel.

recognized, jurisdictional line is, and not whether such line is in exact conformity to the calls of the charter.

It appears that Albany located her north line over fifty years ago, established courses and marked the line, by spotting trees from corner to corner, and has ever since claimed it as their north line. As far as we know, this has ever since been acquiesced in by the State and all others until this suit. And our case is of a line located and marked over fifty years ago, and ever since claimed by Albany as the line, and acquiesced in and regarded by all as the jurisdictional line.

If the land upon the other side of the line was ungranted land, then it was for the State to interfere. The State, having acquiesced in the line which the proprietors established for so long a time after the running and locating, it must be regarded as agreed to by the State, and as settling the jurisdictional line.

Added to this is the settlement and establishment of the same line by the court of common pleas, so that it is now legally established. And though this was done since this suit was commenced, it was only ascertaining where the line was, upon the facts existing at the time it was established, and not making a new line.

The line was located by the proprietors in good faith, and with reasonable conformity to the calls of the charter, and in such cases it has been held to be conclusive even in respect to title. *Davis* v. *Smith*, 1 Yerg. 496; *Houston* v. *Pillow*, 1 Yerg. 481; *Briggs* v. *Parker*, 1 Meigs 43.

Especially would this be so when there had been a long acquiescence of fifty years, as in this case.

Since this suit was commenced the town of Bartlett has been taken from Coos, and made a part of Carroll, and it is worthy of consideration whether the case could now be tried in Coos.

*Fletcher*, for the plaintiffs.

If this was only a question of jurisdiction, it would not be of much consequence to us. We could try our case in Carroll as well as in Coos. But we do not, by any means, so understand it; and between these two lines is much valuable timber, which, we say, belongs to us.

The proprietors of Burton, now Albany, located their line further north than the terms of their charter would warrant, and all the lands upon which the charter was located, were public lands.

The case raises the question whether the proprietors of Burton could disseize the State, by spreading their charter on lands not granted.

The plaintiffs contend that the law is clear that the State cannot be disseized. As they could not be disseized, they had no occasion to enter on the land claimed by Burton, which was not covered by the charter. *Owen* v. *Bartholomew*, 9 Pick. 520.

A grant of land by the Commonwealth will pass its title, notwithstanding an adverse possession, the Commonwealth being incapable of being disseized. This was wild, uncultivated land; our title was from the State, and we ought not and cannot be governed by the location of the proprietors. *Ward* v. *Bartholomew*, 6 Pick. 409; *Hill* v. *Dyer*, 3 Greenl. 441; *Enfield* v. *Permit*, 3 N. H. Rep. 512; *Jackson* v. *Reeves*, 3 Caines 293.

A party, having no paper title to land, will gain possession of no more than he actually cultivates. · *Smith* v. *Holmes*, 7 N. H. Rep. 436.

The charter of Burton does not cover the lands on which this trespass was committed. *Enfield* v. *Day*, 7 N. H. Rep. 457. ·

The State is not bound by the statute of limitations. Ang. on Lim. 34, 40; *Houghton* v. *Baker*, 4 Mass. Rep. 522.

If the charter line is to be regarded as the true one, the

plaintiffs' action is well brought, for the plaintiffs' deed from the State agent was bounded on Burton north line.

EASTMAN, J.   At the time this action was commenced, the line between the towns of Bartlett and Albany, formerly Burton, was the dividing line between the counties of Coos and Carroll, Bartlett being in Coos and Albany in Carroll. Such being the fact, the defendants, at the outset, raise the question of jurisdiction, as being one that is decisive of the present suit.   This question was not probably anticipated by the plaintiffs when the suit was commenced, but being raised, its decision becomes important to the rights of the parties.

The plaintiffs' land is set forth as in the town of Bartlett, in the county of Coos, and as bounded on Burton north line, the action being commenced in Coos, and their right of action depends upon the question as to where that line is. If it be, as contended for by the plaintiffs, that the charter line is the one that is to govern between the parties, then the suit was rightly commenced in Coos, and the plaintiffs should have judgment for the trespass.   But if the line that was located by the proprietors is the one that is to control, then the cutting was in Albany, and the plaintiffs must fail.

The case shows that the proprietors run and established their line more than fifty years ago, and that the town of Albany has exercised jurisdiction up to that line ever since, and, of course, over the *locus in quo.*   It also appears that the court of common pleas, which is by statute the proper tribunal to act in such cases, has established the same line between the towns of Albany and Bartlett, as the true jurisdictional line.   This, although done since the commencement of this suit, and although having no binding effect upon the parties, is still evidence of the fact of the existence of the line.

These facts, disclosed in the case, must, we think, settle the jurisdictional line between the towns and counties.   It

is such a practical location, so long established and so long acquiesced in, that it must control the question of jurisdiction, and limit the extent of Coos county, in that direction, to the proprietors' line.

But although the *locus in quo* is within the jurisdiction of Carrol county, and, consequently, the suit was wrongfully brought in Coos, the action being local, yet it does not thereby follow that the plaintiffs have not a good cause of action, which may be sustained in the county of Carroll.

But even were the action rightfully brought, there are not sufficient facts found in the case to enable us to decide the question of ownership to the *locus in quo* as between these parties. The description in the deed, under which the plaintiffs say they claim, describes the line as Burton north line. At the time the deed was given, in 1831, there were two lines, known to some extent as Burton north lines, one being that which is indicated in the charter, and which the plaintiffs claim as the true one, and the other being that which the proprietors had established. Now there is nothing in the deed to indicate which of these lines was intended. It may, perhaps, be a latent ambiguity, which might be explained upon a trial of the case. Perhaps a plan was used, in making the deed, which would aid in settling the question ; and various other matters might appear, upon a full trial of the case, which would determine clearly the plaintiffs' rights. But we need make no further suggestions upon the merits of the case, since the question of jurisdiction settles the present action.

Since the commencement of this suit the town of Bartlett has, by an act of the Legislature, become a part of the county of Carroll, and no difficulty as to jurisdiction will arise upon another suit. The suggestion of counsel whether the present action could be tried in Coos, Bartlett being now a part of Carroll county, does not, after the conclusion to which we have arrived, require to be examined. It will,

however, be found, we think, upon an examination of the act, that the difficulty suggested is provided against.

*Motion for nonsuit granted.*